**Basil YOUNG, Plaintiff,**

v.

**PRECISION METAL PRODUCTS, INC., Defendant.**

**No. 3:07CV00064(DJS).**

United States District Court, D. Connecticut.

Feb. 11, 2009.

---

Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT, for Plaintiff.

Holly Quackenbush Darin, Susan M. Wright, Ryan & Ryan, New Haven, CT, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Basil Young ("Young") brings this for damages and equitable relief brought against the defendant, Precision Metal Products, Inc. ("PMP") pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("the ADA"), 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. §§ 46a–60 *et seq.*, alleging race discrimination, disability discrimination, and retaliation. PMP now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). For the reasons that hereafter follow, PMP's motion for summary judgment (dkt. # 21) is **GRANTED in part and DENIED in part.**

## I. FACTS

### A. YOUNG'S EMPLOYMENT WITH PMP

Young is a trained mechanical technician and inspector. PMP is a contract manufacturer that produces components for disposable surgical instruments and provides precision machining services to various industries. PMP hired Young in October 2004 to work as a "quality control in-process inspector." When he was hired, Young worked in the pressroom at PMP during the first shift with one other inspector, Chuck Ritenour ("Ritenour").

Young worked full time at PMP for almost five months as an in-process inspector until March 10, 2005, when he was involved in a major automobile accident. He was rushed to the emergency room with injuries to his head, neck, chest, back, arm, and leg. At the direction of various treating physicians, Young was kept out of work for almost seven months. During that period, Young was covered by PMP's short-term disability insurance policy, and his position at PMP as a first-shift in-process inspector was held for him while he was out on disability leave. During his disability leave, Young was bedridden for a number of months. His condition did improve, although he continued to suffer pain and sought ongoing medical attention.

On October 3, 2005, Young, at the written direction of his orthopedic doctor, returned to work at PMP on a light duty restriction of five hours per day. At the time, he was still being treated by physicians and attending physical therapy.

Young requested no other accommodations. Upon returning to work, Young informed his supervisors and co-workers of the details of the accident, his medications, and the therapy he had undergone. John Baloga ("Baloga"), Young's supervisor, told Young that as long as he (Baloga) was kept informed of his condition, Young would continue to have a job at PMP.

Young was assigned to fill in as an inspector in the "C & C machining area," rather than in the pressroom as he had before the accident. Nevertheless, he still retained a desk in the pressroom. Upon returning to work, Young was upset by the condition of his desk, which had been used to store defective parts while he was out on leave. He spoke with Ritenour about the condition of his work area, but he did not make a complaint to a supervisor. After his first day back at work, Young found materials that did not belong to him, such as tools and rags, left on his desk every morning when he reported to work, and his chair was often missing. The Plaintiff testified that his was the only desk with items left on it in this way.

Young had continued to experience pain in his head, hands, legs, back, and neck after returning to work. He has testified that he had difficulties in every aspect of the job at PMP because it consisted of sitting and repetitive motion, and according to Young, John Quilghini ("Quilghini"), a quality manager at PMP, on one occasion told him to "speed up the work." Young also testified, though, that, with accommodations, he was able to perform his job.

On October 26, 2005, Young again found items left on his desk when he arrived at work. He complained to his direct supervisor, Dan Bednarik ("Bednarik"), because the items were impairing his ability to work. Bednarik told Young he suspected the night shift was leaving the mess and

that he would speak with the night supervisor about the problem.

That same day, Young returned to his work area to find someone had placed a garbage pail on his desk and on top of his lunch bag. Young immediately complained to Bednarik, who looked into the situation and determined that Quilghini had placed the garbage pail on Young's desk. Bednarik suggested that Young talk with Quilghini about the incident. Young testified that when he approached Quilghini about the garbage pail, Quilghini told him he put it there to send Young a message. Young responded that he believed he was being discriminated against. According to Young, Quilghini yelled at him to get back to work or else he would not have a job.

Young immediately proceeded to go to Baloga's office to lodge a complaint about the Quilghini's behavior. On his way, Young ran into Quilghini "bad mouthing" him to other co-workers. Young testified that Quilghini was "being rude" in front of the other co-workers and that he spoke to Young in a "demeaning, humiliating, degrading manner," telling him to "get back to work." After discovering that Baloga was not in his office, Young returned to his work area and soon began to have "excruciating pain" in his head and was "short of breath." Young received permission from Bednarik to go home early because he was not feeling well. Young later that day wrote a letter to Baloga outlining Quilghini's conduct, insisting that "corrective action" be taken to prevent further "harassment" by Quilghini, and requesting a meeting with Baloga.

The next morning, on October 27, 2005, Young was not fit to work because he was heavily medicated on Oxycodone and Valium. He therefore called in sick. That same day, Baloga prepared paperwork terminating Young and mailed it to him. Ba-

loga informed Bednarik of the decision to lay off the Plaintiff and instructed Bednarik to inform Young when he returned to work.

Not yet knowing he had been laid off, Young returned to work on October 28, 2005. He was immediately informed that he was laid off for lack of work. Young then submitted a letter of complaint to Baloga, outlining Quilghini's conduct and requesting corrective action.

The reason offered by management at PMP for Young's termination is lack of work. In an affidavit, William O'Brien ("O'Brien"), the owner and president of PMP, stated that during the week of October 24, 2005, he learned that the company was losing approximately $1 million in sales because a client cancelled a product order. O'Brien referred to this as "a significant loss of business." According to Baloga, the order cancellation was communicated to him on October 25, 2005, the day before the above-described garbage pail incident. O'Brien stated in an affidavit that he met with Baloga and together they decided that, due to the economic impact of the loss of business, one of the two positions in the in-process department would be eliminated, and an overtime freeze would be implemented. Baloga and O'Brien state that the decision to lay off Young, made on October 27, 2005, was based on the fact that of the two first shift inspectors in the in-process department, Young had less seniority than the other inspector. Although Baloga testified the company "needed to reduce costs insofar as layoffs," Young was the only PMP employee laid off immediately after the loss of sales.

Both O'Brien and Baloga deny that any action they took regarding the plaintiff had anything to do with his race, color, or disability. They also testified that at the time they made the decision to lay off Young, they had no knowledge of the garbage pail incident or of Young's complaint regarding Quilghini's treatment of him.

Young has submitted evidence that around the time he was terminated, PMP posted two identical newspaper classified advertisements from the Connecticut Post, the first dated Sunday October 23, 2005, and the second dated November 20, 2005. Both advertise that PMP was hiring for "Inspectors, Mechanical, 1st PC and In-Process, 1st and 2nd Shift" positions (dkt. # 31, Exs. 2 & 3.) According to Baloga, the ads were for positions other than the Young's and contained boilerplate language which did not necessarily represent the exact positions and shifts available. Baloga testified the ads were submitted one week before printing, meaning that the second ad was submitted to the newspaper approximately two weeks after Young's termination. Baloga could not recall the exact positions that PMP was advertising, but testified that the ads were not seeking a replacement for Young's position.

## B. YOUNG'S INJURIES AND CONTINUING SYMPTOMS

As a result of the accident, Young suffers from residual neurological damage with symptoms consisting primarily of recurrent neck and head pain as well as pain in his legs, hand, back, and groin. He has seen several physicians and specialists for his condition since the accident. His pain is triggered by physical or mental exertion and certain body movements like bending, twisting, and repetitive motion and he testified that he is in pain every day when he wakes up. He has taken several medications for his condition including sleeping pills, muscle relaxers, and Tylenol. Despite his symptoms and recurring pain, Young is currently able to work, drive,

walk, shop for food, shower, and generally take care of himself.

Young currently works forty hours per week. He has testified that he needs to work less, but his neurologist allowed him to work forty hours per week because Young wants to keep his job. He continues to require several work accommodations, including: being permitted to be late to work sometimes; having restrictions on lifting, bending, and twisting activities; and being allowed to take more breaks. He also testified that he needs to wear an athletic supporter, that he has "limitations in that regard," and that he has to be careful, "even at work."

Young claims that, while at PMP, he had difficulties in every aspect of his job, such as sitting at a machine being involved in repetitive motions. Young testified that he also had difficulty maintaining fifteen minutes of looking at an instrument, which is part of his job, and difficulty with "statistic" motion, getting information, or utilizing this information. He has to be careful bending and turning, and is in a "continual balancing act" trying to maintain a posture that does not trigger headaches. According to Young, once he gets a headache, it can last from three days to a week. In addition, Young testified that physical and mental exertion triggers his headaches, which leave him "incapacitated."

In terms of sleeping, Young testified that he has problems sleeping because of his pain. He is on medications for his sleeping problems. Young also testified that his doctor sent notice to his current employer requesting his employer to allow Young's recurrent tardiness without reprimand because of his sleeping problems. Moreover, Young claims to have problems with sexual activity.

A doctor's report from March 14, 2008 states that Young has been seen by several physicians and undergone various treatments for his pain, including physical therapy, acupuncture, chiropractic, and Botox injections. The report states that Young is "an unfortunate male status post MVA [motor vehicle accident], now with residual pain. It is likely a combination of occipital neuralgia, possible rebound headache, and possible cervical radiculopathy. He may also be suffering from some level of supraorbital neuralgia." (Dkt. # 31, Ex. 1.) The report also notes: "The patient states he is in pain on a daily basis, he rates from 5 to a 9, averages a 7. He is virtually never out of pain." (*Id.*) Young testified that he was told by one neurologist that he will live with this condition for the rest of his life.

## II. DISCUSSION

In the first five counts of his complaint, Young brought claims of race discrimination under Title VII, 42 U.S.C. § 1981, and CFEPA, and retaliation under Title VII and CFEPA. In his opposition memorandum, Young conceded that the record is insufficient to maintain these claims. Therefore, with regard to the First, Second, Third, Fourth, and Fifth Causes of Action, PMP's motion for summary judgment (**dkt. # 21**) is **GRANTED.**

This leaves Young's disability discrimination claims under the ADA and CFEPA. PMP argues that there are no material facts in dispute, and that it is entitled to judgment as a matter of law. Young argues that he has provided the Court with sufficient evidence to show disability discrimination. The Court shall address the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975)).

A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. AMENDMENTS TO THE ADA

Before discussing the merits of the parties' arguments, the Court points out that the ADA recently has been amended. The ADA Amendments Act of 2008, Pub. L. No. 110–325, 122 Stat. 3553 (2008), substantially changes how employers and courts are to evaluate ADA claims. For example, Congress has expanded the class of major life activities to specifically include, among others, seeing and working. *Id.* at § 3(2)(A). In addition, Congress expressly rejected certain holdings of the Supreme Court in *Sutton v. United Air Lines,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) and *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), which "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect" and caused "lower courts [to] incorrectly [find] in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110–325, § 2(a)(4), (5), & (6).

Nevertheless, the express language of the ADA Amendments Act of 2008 directed that these amendments would not take effect until January 9, 2009. *Id.* § 8. The Court normally must apply the laws and interpretations that were in force when the complained-of acts occurred. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Generally, a statute is not given retroactive effect "unless such construction is required by explicit language or by necessary implication." *Fernandez–Vargas v. Gonzales,* 548 U.S. 30, 37, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). This, however, is not the case here. Moreover, it appears that every court that has addressed this issue, which includes a number of federal district courts and at least one federal appeals court, has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date. *See Kiesewetter v. Caterpillar, Inc.,* 295 Fed.Appx. 850, 851 (7th Cir.2008); *Supinski v. United Parcel Serv., Inc.,* No. 3:CV–06–0793, 2009 WL 113796, at *5 n. 6 (M.D.Pa. Jan. 16, 2009); *Walstrom v. City of Altoona,* No. 3:2006–

81, 2008 WL 5411091, at *5 n. 3 (W.D.Pa. Dec. 29, 2008); *Hays v. Clark Prods., Inc.,* No. 1:07–CV–328, 2008 WL 5384300, at *6 n. 3 (S.D.Ind. Dec. 18, 2008); *Levy ex rel. Levy v. Hustedt Chevrolet,* No. 05–4832(DRH)(MLO), 2008 WL 5273927, at *3 n. 2 (E.D.N.Y. Dec. 17, 2008); *Knox v. City of Monroe,* No. 07–606, 2008 WL 5157913, at *5 n. 10 (W.D.La. Dec. 9, 2008); *Gibbon v. City of New York,* No. 07–Civ–6698, 2008 WL 5068966, at *5 n. 47 (S.D.N.Y. Nov. 25, 2008). The Court therefore applies the prevailing presumption against retroactivity and finds 2008 amendments to the ADA to be inapplicable to this case.

## C. ADA DISABILITY DISCRIMINATION

 The ADA provides that, "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims arising under the ADA are analyzed using the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir.2006) Under that analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Id.*

### 1. Prima Facie Case

 As the Second Circuit has noted,

[t]o establish a prima facie case under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

The parties dispute whether Young has established the second element of the prima facie case.

The Court thus turns to the question of whether Young qualifies as an individual with a disability under the ADA. PMP contends that Young does not. The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Specifically, it argues that because Young is currently working forty hours a week, takes care of himself, drives, shops for food, showers, and can walk, he has "pointed to no impairment which substantially impairs one of life's major activities."

Young responds that there is substantial evidence that would allow a jury to find he has a physical impairment that substantially limits one or more of the major life activities, and is therefore disabled under Subsection (a). Specifically, Young argues that the impairments resulting from injuries sustained in the auto accident prevent him from working, sleeping, and sexual activity. Young also contends that he was regarded by PMP as having an impairment, and therefore qualifies also under Subsection (c).

■ Fulfilling the ADA's statutory definition of a disability is a "significant threshold for seeking redress under the ADA." *Felix v. N.Y. City Transit Auth.,* 324 F.3d 102, 107 (2d Cir.2003). The Supreme Court has provided a three-step framework for evaluating whether the plaintiff is disabled under Subsection (a). *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, the Court must determine whether the plaintiff has a physical impairment. *Id.* Second, the Court must identify the life activities on which the Plaintiff relies and determine whether any one constitutes a major life activity under the ADA. *Id.* Third, "tying the two statutory phrases together, [the Court must] ask whether the impairment substantially limited the major life activity." *Id.*

■ PMP does not suggest that Young does not suffer an impairment. The issue is whether Young's impairment substantially limits one or more major life activities. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.' ... The EEOC has codified regulations interpreting the term 'substantially limits' in this manner, defining the term to mean '[u]nable to perform' or '[s]ignificantly restricted.'" *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. The phrase "substantially limits" must be interpreted "strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc.,* 534 U.S. at 197, 122 S.Ct. 681. To determine if a condition is substantially limiting, the courts must conduct an "individualized inquiry." *Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 152 (2d Cir.1998). In evaluating the extent of a plaintiff's impairment, courts must look at the extent of the impairment after accounting for self-mitigating measures, such as medication and other devices.

*Albertson's Inc. v. Kirkingburg,* 527 U.S. 555, 565–66, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999).

■ The Court discerns three separate major life activities in which Young claims he substantially limited: working, sleeping, and sex. Working is a "major life activity" for the purposes of the ADA. *See* 29 C.F.R. § 1630.2(i). To show he is substantially limited in working, Young provides evidence that he was on light duty at Precision Metals, he experiences residual pain, he is restricted from lifting, he is currently restricted from working overtime, and his doctor has given notice to his current employer that he may be late for work. PMP argues that because Young now works full time at a position similar to the one he had at PMP, he is not substantially limited in his ability to work.

"When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs,' not simply a particular job." *Schapiro v. New York City Dep't of Health,* 25 Fed.Appx. 57, 61 (2d Cir.2001) (quoting *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139); *see* 29 C.F.R. § 1630.2(j)(3) ("With respect to the major life activity of working, (i)[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.").

■ Young has not offered evidence to show he is, or ever was, significantly restricted in the ability to perform either a class of jobs or a broad range of jobs. In the Court's view, the fact that Young is able to maintain a full time job that is apparently similar to his job at PMP, while a laudatory feat given his accident, undercuts the argument that he is significantly

# 226

restricted in working. Young testified that he could not work forty hours when he returned to work at PMP after the accident, but he is now able to perform his current job within the aforementioned restrictions. Although Young has provided evidence that he was temporarily limited in his ability to work at PMP, he has not shown that he is permanently and substantially limited in this major life function. Temporary limitations do not warrant protection under the ADA. *Toyota Motor Mfg., Ky., Inc.*, 534 U.S at 198, 122 S.Ct. 681; *see Stronkowski v. St. Vincent's Med. Ctr.*, No. 3:94CV2175(AHN), 1996 WL 684407, at *7 (D.Conn.1996) (holding that employee with back injury, which temporarily required her to work part-time and undergo physical therapy, was not disabled under the ADA).

Moreover, Young's testimony about having "difficulties" at a particular job and using caution while bending and turning is not enough to satisfy the ADA threshold of demonstrating a substantial limitation on working. While this may show that Young has an impairment, it does not provide evidence that the major life activity of working is substantially limited. *See Colwell v. Suffolk County Police*, 158 F.3d 635 (2nd Cir.1998); *Smith v. Cingular Wireless*, 579 F.Supp.2d 231 (D.Conn.2008). Therefore, the Court finds that Young was not substantially limited in the major life activity of working.

 Young asserts that he is disabled because the pain associated with his nerve impairment substantially limits the major life activities of sleeping and sex. Sleeping is "undoubtedly a major life activity." *Colwell*, 158 F.3d at 643 (citing *Reeves* 140 F.3d at 152). Furthermore, the Supreme Court has determined that reproduction is a major life activity regardless of whether reproduction is an important part of any particular plaintiff's

life. *See Bragdon*, 524 U.S. at 637–39, 118 S.Ct. 2196. The Court notes that PMP does not specifically address Young's alleged sleeping or sex impairments. As a result, the Court's analysis on that issue will be pithy.

 Because "[d]ifficulty sleeping is extremely widespread[,]" a plaintiff must show "that his affliction is . . . worse than is suffered by a large portion of the nation's adult population." *Colwell*, 158 F.3d at 644. Young testified he has "problems sleeping" and is unable to "sleep on [his] head and neck" and is in pain every day when he wakes up. While Young takes sleeping pills, the record does not show that his medications have alleviated this problem. He testified that he is currently having trouble getting to work on time because his pain creates problems sleeping and that he recently sought a notice from his physician that would allow him to be late for work without reprimand. In the Court's view, the inability to rest upon one's head or neck while sleeping goes beyond the average insomnolence that afflicts the population at large. Therefore, the Court shall not find as a matter of law that Young is not substantially limited in the major life activity of sleeping.

With regard to reproduction, which Young calls "sexual activity," the Court admits that there is little in the submitted record. The Court assumes, however, that this is because PMP does not address this particular major life activity in its memoranda. Although an opposition to summary judgment cannot rely merely on allegations or denials in the pleadings, and must be supported by admissible evidence, *see* Fed.R.Civ.P. 56(e), the summary judgment motion itself must first be "properly made and supported," *see id.* Thus, Young was not required to address the issue of sex (or reproduction) because it was not raised by PMP. Therefore, the

Court cannot find as a matter of law that Young is not substantially limited in the major life activity of reproduction (or sex).

2. Legitimate Reason & Pretext

■ Given that PMP does not discuss with much detail the remaining elements of the *McDonnell Douglas* framework, the Court's discussion here need not be lengthy. The legitimate, non-discriminatory reason proffered by PMP for Young's termination was that "a significant loss of business" necessitated the elimination of Young's position. This satisfies PMP's burden to produce a legitimate reason for the termination.

The Court is not persuaded by PMP's arguments with regard to pretext. PMP argues that there is an "absence of any facts to suggest that the reason for [Young's] termination is false." The Court does not agree. Young's termination occurred less than a month after he returned to work on light duty. He claims that after returning to work, Quilghini began to bother him at work, and it appears that Quilghini's conduct was based on Young's new workplace limitations. Young was terminated soon after complaining about Quilghini. In addition, Young has submitted two newspaper classified advertisements from the Connecticut Post in which PMP announced it was hiring for "Inspectors, Mechanical, 1st PC and In–Process, 1st and 2nd Shift" positions. Young was an in-process inspector. In the Court's view, Young has satisfied his burden with regard to pretext.

To summarize the above findings, with regard to Young's ADA discrimination claim insofar as it is based on Young being substantially limited in the major life activity of working, PMP's motion for summary judgment (**dkt. # 21**) is **GRANTED.** With regard to Young's ADA discrimination claims insofar as they are based on Young being substantially limited in the major life activities of sleeping and reproduction, PMP's motion for summary judgment (**dkt. # 21**) is **DENIED.**

## D. ADA PERCEIVED DISABILITY DISCRIMINATION

■ Young also alleges that PMP discriminated against him because of a perceived disability. The ADA not only prohibits discrimination based on an employee's actual disability, it prohibits discrimination based on perceived physical or mental impairments. *See* 42 U.S.C. § 12102(1)(C), (4). That is, a plaintiff can be considered disabled under the ADA even if she is not disabled, but her employer wrongly believes she is. *See Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. Because PMP did not raise this issue on summary judgment, the Court shall not grant summary judgment on that issue. Consequently, with regard to Young's ADA claim of perceived disability discrimination, PMP's motion for summary judgment (**dkt. # 21**) is **DENIED.**

## E. ADA REASONABLE ACCOMMODATION

■ In the complaint, Young alleges that PMP violated the ADA by not providing him with reasonable accommodations for his disabilities. PMP has presented arguments on this specific issue, but Young, in his memorandum of law, did not respond. Thus, the Court shall deem this claim to be abandoned. *See Coltin v. Corp. for Justice Mgmt., Inc.*, 542 F.Supp.2d 197, 206 (D.Conn.2008). Moreover, it appears to the Court that PMP did provide Young with reasonable accommodations, and the Court has not found an instance in the record where PMP denied a reasonable accommodation to Young. Therefore, with regard to Young's ADA reasonable accommodation claim, PMP's

motion for summary judgment (**dkt. # 21**) is **GRANTED.**

### F. CFEPA

 Discriminatory claims brought under CFEPA are construed similarly to that of ADA claims, with the Connecticut courts reviewing federal precedent concerning employment discrimination for guidance in enforcing the CFEPA. *Levy v. Comm'n of Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996). Nevertheless, to be "disabled" under Connecticut law is different than being "disabled" under the ADA. *Shaw v. Greenwich Anesthesiology Assocs.*, 137 F.Supp.2d 48, 65 (D.Conn.2001). That is, CFEPA has a far broader definition of "disabled" than the ADA. *See Beason v. United Techs. Corp.*, 337 F.3d 271, 277 (2d Cir.2003). The statutory definition of a physically disabled person, for purposes of the CFEPA, is: "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, ..." Conn. Gen.Stat. § 46a–51(15). Given that some

of Young's ADA disability discrimination claims have survived summary judgment, it is clear that Young's disability discrimination claims under CFEPA, the standard for which is not as stringent as the ADA, should also survive. Therefore, with regard to Young's CFEPA disability discrimination claim, PMP's motion for summary judgment (**dkt. # 21**) is **DENIED.**

With regard to any CFEPA reasonable accommodation claim, the Court believes that such a claim fails as a matter of law for the same reasons that the ADA reasonable accommodation claim fails. PMP has presented arguments on the reasonable accommodation issue, but Young, in his memorandum of law, did not respond. Thus, the Court shall deem this claim to be abandoned. *See Coltin*, 542 F.Supp.2d at 206. Moreover, it appears to the Court that PMP did provide Young with reasonable accommodations, and the Court has not found an instance in the record where PMP denied a reasonable accommodation to Young. Therefore, with regard to Young's ADA reasonable accommodation claim, PMP's motion for summary judgment (**dkt. # 21**) is **GRANTED.**[1]

---

1. In the complaint, it does not appear that Young has alleged a perceived disability discrimination claim under CFEPA. The Court points out, however, that there is some uncertainty as to whether a plaintiff can bring such a claim. Unlike the ADA, CFEPA's definition of someone who is "physically disabled" does not expressly include those who are perceived by their employers to be physically disabled. See Conn. Gen.Stat. § 46a–51(15). As a result, the Second Circuit has held that perceived disability discrimination claims are not viable under CFEPA. *Beason*, 337 F.3d at 279–80. Nevertheless, *Beason*, as a decision from a federal court of appeals, is not controlling when it comes to the interpretation of Connecticut law, and some decisions from the Connecticut Superior Court have expressed their disagreement with *Beason*'s holding on this issue. *See Graham v. Boehringer Ingelheim Pharmaceuticals*, No. CV040488908S, 2007 WL 3317528, at *10–12 (Conn.Super.Ct.

Oct. 19, 2007); *see also Cimino v. Pratt & Whitney*, No. CV075011977, 2007 WL 4577957, at *3–4 (Conn.Super.Ct. Nov. 29, 2007). In addition, there is an indication, but not an express holding, from the Connecticut Supreme Court that such a claim exists under CFEPA. *See Ann Howard's Apricots Restaurant Inc. v. Comm'n on Human Rights and Opportunities*, 237 Conn. 209, 224, 676 A.2d 844 (1996) (the Connecticut Supreme Court, in upholding a hearing officer's finding of liability, noted that "[i]n this case, the hearing officer concluded that Doe had established that the plaintiff, *on the basis of its belief or perception that Doe had AIDS, had discriminated against Doe* by failing to reinstate him following his leave of absence. *Our legislature has clearly stated that discrimination based on a physical disability is prohibited.*") (emphasis added). The undersigned is inclined to agree with the Connecticut decisions, not *Beason*, on this issue; however,

## III. CONCLUSION

For the foregoing reasons, PMP's motion for summary judgment (**dkt. # 21**) is **GRANTED in part and DENIED in part.**

A. With regard to the Title VII, 42 U.S.C. § 1981, and CFEPA race discrimination claims, and the Title VII and CFEPA retaliation claims, as contained in the First, Second, Third, Fourth, and Fifth Causes of Action, PMP's motion for summary judgment is **GRANTED.**

B. With regard to Young's ADA discrimination claim in the Sixth Cause of Action, insofar as it is based on Young being substantially limited in the major life activity of working, PMP's motion for summary judgment is **GRANTED.**

C. With regard to Young's ADA discrimination claims in the Sixth Cause of Action, insofar as they are based on Young being substantially limited in the major life activities of sleeping and reproduction, PMP's motion for summary judgment is **DENIED.**

D. With regard to Young's ADA claim of perceived disability discrimination in the Sixth Cause of Action, PMP's motion for summary judgment is **DENIED.**

E. With regard to Young's ADA reasonable accommodation claim in the Sixth Cause of Action, PMP's motion for summary judgment is **GRANTED.**

F. With regard to Young's CFEPA disability discrimination claim in the Seventh Cause of Action, PMP's motion for summary judgment is **DENIED.**

G. With regard to Young's CFEPA reasonable accommodation claim in the Seventh Cause of Action, PMP's motion for summary judgment is **GRANTED.**

because there is no perceived disability discrimination CFEPA claim currently before the

*Therefore, the remaining claims for trial are: (1) Young's ADA discrimination claims insofar as they are based on Young being substantially limited in the major life activities of sleeping and reproduction; (2) Young's ADA claim of perceived disability discrimination; and (3) Young's CFEPA disability discrimination claim.*

Court, it need not decide the issue.