Seva BRODSKY, Plaintiff,

v.

**NEW ENGLAND SCHOOL
OF LAW, Defendant.**

**Civil Action No. 09–10007–NMG.**

United States District Court,
D. Massachusetts.

April 29, 2009.

James M. Baron, Law Office of James M. Baron, Waltham, MA, for Plaintiff.

Allyson E. Kurker, Louis A. Rodriques, Bingham McCutchen LLP, Boston, MA, for Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This case arises out of the plaintiff's expulsion from law school for obtaining a failing grade in two courses. The plaintiff asserts that the law school, by refusing to readmit him, violated the Americans with Disabilities Act ("the ADA"), the Rehabilitation Act, the Massachusetts Equal Rights Act ("MERA") and Amendment Article 114 of the Massachusetts Constitution's Declaration of Rights ("Article 114"). He also brings claims for breach of contract and violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A ("Chapter 93A").

### I. *Background*

#### A. Factual Background

The plaintiff, Seva Brodsky ("Brodsky"), alleges that from 2003 until 2005, he was a student at the defendant New England School of Law ("NESL") and prior to that an electronic and software engineer for 16 years. In the spring of 2005, he received failing grades in two courses, Constitutional Law and Criminal Procedure, after which he was expelled.

Following his expulsion Brodsky underwent a neuropsychological exam with Dr. Rimma Kovalcik ("Dr. Kovalcik") which revealed that he suffers from memory and organizational deficits "consistent with long-term damage to the brain," possibly arising from an accident that occurred in 1982. Despite those mental impairments, Dr. Kovalcik concluded that Brodsky could succeed academically if provided with reasonable accommodations. Brodsky claims that Dr. Kovalcik's conclusions are supported by a brain scan taken in October, 2008, in Israel.

Following Dr. Kovalcik's examination, Brodsky presented medical evidence of his disability to NESL at a hearing for readmission, held in November, 2005. He informed NESL that he was unaware of his disability at the time of his academic failures but that with reasonable accommodation he would be capable of success. Brodsky alleges that the hearing panel refused him readmission but that a NESL dean told him that "the best evidence" he could present at a future hearing would be "academic success in a relevant program of study."

Brodsky maintains that in 2006, in response to that suggestion, he enrolled in a Global Law Program at the School of Law at the University of Haifa in Israel and successfully completed six courses. He alleges that at a second hearing at NESL, held in July, 2006, he was again denied readmission.

#### B. Procedural History

Brodsky filed his complaint for the alleged violations noted above in state court on November 6, 2008, and amended it on December 1, 2008. On January 5, 2009, the defendant NESL removed the case to federal court on federal question grounds. Shortly thereafter NESL moved to dismiss the amended complaint. An opposition and reply followed and this Court heard oral argument on the motion at a scheduling conference held on April 23, 2009.

### II. *Motion to Dismiss*

#### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only

to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

### B. Application

#### 1. Plaintiff's ADA, Rehabilitation Act and MERA Claims

■ Defendant NESL moves to dismiss Brodsky's claims under the ADA, the Rehabilitation Act and the MERA on the ground that he has not sufficiently alleged that he is "disabled" under those statutes. The term "disability" is used both in the Rehabilitation Act and in the ADA, *see* 29 U.S.C. § 794; 42 U.S.C. § 12102, and the Supreme Court has construed the ADA as granting "at least as much protection as provided by the regulations implementing the Rehabilitation Act." *See Bragdon v. Abbott*, 524 U.S. 624, 632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Furthermore, the term "handicap" as used in the MERA is "virtually identical to the definition of 'disability' in the ADA and Rehabilitation Act." *See Marlon v. W. New England Coll.*, Civ. No. 01–12199, 2003 WL 22914304, at *10 (D.Mass. Dec. 9, 2003), *aff'd* 124 Fed.Appx. 15 (1st Cir.2005). The Court will therefore focus on Brodsky's claims under the ADA but the analysis applies equally to his claims under the Rehabilitation Act and the MERA.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1)(A). Major life activities include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating and working. *Id.* § 12102(2)(A).

As the plaintiff points out, Congress recently amended the ADA, in response to what it perceived to be an inappropriately narrow definition of "substantially limited" being applied in the federal courts. *See* Pub. L. No. 110–325, § 2(a)(6), 122 Stat. 3553 (2008) (noting that "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities"). That amendment rejects an interpretation of "substantially limited" as meaning "significantly restricted," *id.* § 2(b)(6), and rejects the requirement that

an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.

§ 2(b)(4) (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002)).

■ Although the ADA amendment is undoubtedly intended to ease the burden of plaintiffs bringing claims pursuant to that statute, it is unclear whether the plaintiff should enjoy the benefit of those amendments in this case. Numerous federal courts which have considered the issue have determined that the amendments, which became effective on January 1, 2009, should not be given retroactive effect and those courts have instead applied the law in effect at the time of the complained-of conduct. *See, e.g., Fikes v. Wal–Mart*,

*Inc.*, No. 08–12773, 322 Fed.Appx. 882, 883 n. 1, 2009 WL 961774, at *1 n. 1 (11th Cir. Apr. 10, 2009); *Equal Employment Opportunity Comm'n v. Agro Distribution, LLC*, 555 F.3d 462, 469 n. 8 (5th Cir.2009); *Young v. Precision Metal Prods., Inc.*, 599 F.Supp.2d 216, 223–24 (D.Conn.2009) (collecting cases). The Sixth Circuit Court of Appeals has, however, applied the ADA amendment in a case involving *prospective* injunctive relief sought by a plaintiff. *Jenkins v. Nat'l Bd. Of Med. Exam'rs*, No. 08–5371, —— Fed.Appx. ——, ——, 2009 WL 331638, at *1 (6th Cir. Feb. 11, 2009).

The rationale behind applying a new statute to a claim for prospective relief (for example, injunctive relief) but declining to give that same statute retroactive effect (by applying it, for example, to a claim for damages) is grounded in sound considerations of fairness. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly...."). Allowing a party to pursue a claim for damages based on a change in the law would "attach[ ] new legal consequences to events completed before its enactment" and such a disruption of settled expectations should not be undertaken in the absence of clear legislative intent. *See id.* at 270, 114 S.Ct. 1483. On the other hand, when a new statute "affects the propriety of prospective relief, application of the new provision is not retroactive" and no injustice results from requiring the defendant to conform his conduct to the altered legal landscape. *Id.* at 273, 114 S.Ct. 1483.

Brodsky's complaint complicates the issue because he seeks both damages for past conduct and injunctive relief (reinstatement into the law school with reason-able accommodation). It is therefore conceivable that he should enjoy the benefit of the ADA amendments with respect to his claim for injunctive relief but not with respect to his claim for damages. The Court need not make that determination at this stage, however, because, as explained below, even under the pre-amendment ADA regime Brodsky's complaint contains allegations sufficient to withstand a motion to dismiss. The Court nevertheless raises the issue to highlight its potential significance going forward.

■ In his complaint, Brodsky asserts that he suffers from a "mental impairment which substantially limits [his] ability to learn." NESL contends that, despite that allegation, Brodsky has failed to link his disability to his academic failures in the spring of 2005. Although the complaint does not explicitly state that Brodsky's disability caused him to fail two classes, this Court concludes that such an inference can be fairly drawn from his allegations.

Although Brodsky has at least alleged a disability that substantially limits his ability to learn, the Court notes that he faces a substantial obstacle in *proving* the same. In particular, it is less than clear how Brodsky's poor "executive functioning" and memory abilities impacted his performance in two law school classes but not others. Nevertheless, Brodsky is not required to make such a showing at the pleading stage and his failure to allege other manifestations of his disability does not automatically foreclose his ADA claim.

Consequently, Brodsky's ADA, Rehabilitation Act and MERA claims will not be dismissed.

### 2. Plaintiff's Article 114 Claims

■ Brodsky also asserts that his expulsion and NESL's refusal to readmit him violate Amendment Article 114 of the Mas-

sachusetts Constitution. Article 114 states:

> No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, denied the benefits of, or be subject to discrimination under any program or activity within the commonwealth.

Mass. Const. amend. art. 114.

Massachusetts courts have never held that Article 114 creates a private right of action, although the First Circuit Court of Appeals has suggested that it does. *See Layne v. Superintendent, Mass. Corr. Inst., Cedar Junction,* 406 Mass. 156, 159 n. 3, 546 N.E.2d 166 (1989) (citing *Grubba v. Bay State Abrasives, Div. of Dresser Indus., Inc.,* 803 F.2d 746, 747–48 (1st Cir.1986)). Nevertheless, Massachusetts courts have indicated that "[t]here is no individual right of action under art. 114 [where] a plaintiff may seek redress under an existing statute." *Kilburn v. Dep't of Corr. State Transp. Unit,* No. 07–P–812, 72 Mass.App.Ct. 1109, 2008 WL 2969698, at *3 (Mass.App.Ct. July 25, 2008) (unpublished).

Here, Brodsky's Article 114 claims are indistinguishable from his claims brought under the MERA. Because MERA provides Brodsky with a "well-worn procedural path to relief" he will not be permitted to proceed directly under the Massachusetts Constitution. *See Layne,* 406 Mass. at 159, 546 N.E.2d 166; *see also Marlon,* 2003 WL 22914304, at *10 n. 19 (noting that a plaintiff cannot separately bring both an Article 114 claim and a MERA claim that arise from the same conduct).

### 3. Plaintiff's Breach of Contract Claims

■ Brodsky also asserts a breach of contract claim based on language in the NESL Handbook which states: "Any student receiving a failing grade in a required course must retake the course." Brodsky claims that NESL violated the terms of the handbook when it expelled him for failing two courses rather than requiring him to retake those courses.

NESL has moved to dismiss Brodsky's breach of contract claim. It contends that language elsewhere in the Handbook demonstrates that its actions, far from violating the Handbook, were consistent with what that document requires. Specifically, another portion of the Handbook provides that: "Any student shall be academically dismissed who ... [r]eceived two final grades of D+ or lower in any one academic year." [1]

Brodsky asserts that the two provisions of the Handbook are conflicting and thus create an ambiguity which precludes dismissal of his breach of contract claim. That argument is unpersuasive. No ambiguity exists because the two provisions of the Handbook can be read together to give reasonable meaning to both. *See Sherman v. Employers' Liab. Assurance Corp., Ltd.,* 343 Mass. 354, 357, 178 N.E.2d 864 (1961) ("An interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable."). The Handbook clearly requires a student who fails *one* course to retake it but that a student who receives lower than a D+ in *two* courses be expelled. Consequently, NESL actions were consistent

---

1.  Although the Handbook was not attached to the complaint, the Court considers it in deciding the defendant's motion to dismiss in accordance with *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.1988) ("when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading") (citation and internal quotation marks omitted).

with the Handbook and Brodsky's breach of contract claim will be dismissed.

### 4. Plaintiff's Chapter 93A Claims

Brodsky claims that NESL violated Chapter 93A by 1) refusing to allow him to retake the courses he failed, 2) not readmitting him, 3) advising him to pursue studies at another school but neglecting to tell him that such study should be at an American and ABA-approved school and 4) making certain assertions in proceedings before the Massachusetts Commission Against Discrimination ("the MCAD"). NESL has moved to dismiss those claims on the grounds that Chapter 93A does not apply to nonprofit institutions such as NESL and Brodsky's allegations, taken as true, do not amount to a violation of Chapter 93A.

Massachusetts courts have held that universities and other charitable institutions do not engage in "trade or commerce" (and, thus, are not subject to Chapter 93A) when they engage in activities in furtherance of their core mission, as opposed to activities undertaken in a business context. *See Thornton v. Harvard Univ.*, 2 F.Supp.2d 89, 95 (D.Mass.1998) (citing *Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 679 N.E.2d 191 (1997)). Although "an entity's status as a charitable corporation is not, in and of itself, dispositive" of whether Chapter 93A applies, activities that are purely incidental to a university's educational mission are not undertaken in a business context and not subject to Chapter 93A. *See Linkage*, 425 Mass. at 25, 679 N.E.2d 191 (citing *All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Boston*, 416 Mass. 269, 271, 620 N.E.2d 778 (1993)).

Here, all of the conduct Brodsky complains of was in furtherance of NESL's core educational mission or was incidental to that mission. Setting academic standards for students and enforcing them is part of any university's core mission, as is advising students on how to improve their performance. Any statements made by NESL during the MCAD proceedings involving Brodsky are incidental to that core mission, and thus also beyond the reach of Chapter 93A. *All Seasons Servs.*, 416 Mass. at 271, 620 N.E.2d 778 (conduct incidental to hospital's primary function of providing medical service not within the ambit of Chapter 93A).

Because the Court concludes that NESL was not engaged in "trade or commerce" for the purpose of Chapter 93A, Brodsky's claims under that statute will be dismissed and the Court need not further consider whether any of the specific conduct complained of rises to the level of a Chapter 93A violation.

### ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 8) is, with respect to plaintiff's Article 114 claims (Counts 5 and 6), breach of contract claims (Counts 13 and 14) and Chapter 93A claims (Counts 9–12), **ALLOWED** and is otherwise **DENIED**.

**So ordered.**